UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MANUEL MARTINEZ FERRERA,

Petitioner(s),

v.

BRUCE SCOTT, et al.,

Respondent(s).

CASE NO. C26-2982-KKE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner filed a petition for a writ of habeas corpus, asserting that his re-detention by Immigration and Customs Enforcement ("ICE") violated his due process rights. Dkt No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 5. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner Manuel Martinez Ferrera, a native and citizen of Honduras, entered the United States in 2004 without being inspected, admitted, or paroled. Dkt. No. 6 ¶¶ 3–4. On April 22, 2010, Petitioner was convicted of "driving with license suspended or revoked license" in Snohomish County, Washington, for which Petitioner was sentenced to a 90-day jail term with 89 days suspended. *Id.* ¶ 5. After Petitioner served his one-day active sentence, United States Immigrations and Customers Enforcement ("ICE") officers detained Petitioner and placed him in immigration custody on April 23, 2010. *Id.* ¶ 7. On April 26, 2010, Petitioner was served with a

Notice to Appear ("NTA") and placed in removal hearings. *Id.* ¶ 8–9. An Immigration Judge ("IJ") granted Petitioner "voluntary departure under safeguards with an alternative order of removal to Honduras" on June 30, 2010, and Petitioner departed the United States on July 15, 2010. *Id.* ¶¶ 9–10.

The record is contradictory as to Petitioner's re-entry. The declaration of Deportation Officer Ouk states that in May 2015, "Petitioner was paroled with deferred action to the United States." Dkt. No. 6 ¶ 12. And the I-831 similarly states that Petitioner "was paroled with deferred Action" on "05/2015[.]" Dkt. No. 7-1 at 4. However, the attached I-862 states he was paroled into the United States on May 15, 2016, at Miami, Florida, and granted deferred action. Dkt. No. 7-4 at 4. The I-862 further states his deferred action was cancelled in 2018. *Id.*

After Petitioner's deferred action status was cancelled in April 2018, Petitioner presented himself to ICE at the Seattle field office on August 20, 2018, and Petitioner was served with an NTA and released on an Order of Release on Recognizance ("OREC"). *Id.* ¶¶ 15–18. The record does not reflect that Petitioner's OREC was ever cancelled, or that any progress was made in his removal proceedings. On June 17, 2020, Petitioner was sent a notice placing him in "deferred action" for a period of one year "as an act of discretion by and for the administrative convenience of the United States Government." Dkt. No. 7-6 at 2, Dkt. No. 6 ¶ 19. The notice stated, "Deferred action will allow you to remain in the United States until it has been determined by the United States Government that the need for this type of action is no longer warranted." Dkt. No. 7-6 at 2. There is no record of any further communication from the Government to Petitioner.

On July 8, 2026, ICE arrested Petitioner while he was getting into his car in a "targeted enforcement operation." Dkt. No. 7-1 at 3; Dkt. No. 6 ¶ 20. Petitioner was issued a "Form I-200, Warrant of Arrest of Alien," transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, issued an NTA, and placed in removal proceedings. *Id.* ¶ 21. On August

21, 2026, Petitioner filed the pending habeas petition. Dkt. No. 1. On August 29, 2026, Petitioner applied for relief from removal, and his application remains pending. Dkt. No. 6 ¶ 24. According to the Government, Petitioner has neither received nor requested a bond hearing.

## II. ANALYSIS

### A. Legal Standards

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show that he is "in custody in violation of the Constitution or law or treaties of the United States. *Id.* § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Because Petitioner proceeds *pro se*, the Court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Petitioner is Detained Pursuant to 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225(b).

The Court must address a threshold question of whether Petitioner is detained under 8 U.S.C. § 1225(b)(2)(a), as the Government contends, or under § 1226(a), as Petitioner asserts. Dkt. No. 5 at 4–7, Dkt. No. 1 at 3–4. For the reasons below, the Court agrees with Petitioner and finds that § 1226(a) governs his detention.

Section 1225(b)(2)(A) "appl[ies] to [noncitizens] entering the United States at the border[,]" while "Section 1226, by contrast, … govern[s] inadmissible and deportable [noncitizens] present in the interior of the United States." *Rodrigues Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026); *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (holding Section 1226 is the "default rule" for detaining and removing noncitizens who are "already present in the United States."). In other words, noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazques*, 183 F.4th at 1165.

Even where the Government detains a noncitizen upon arrival, "if he has been treated by [the government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225, the former is more likely to apply." *Bello Chacon v. Hermosillo*, 2:25-CV-02299-TMC, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)). One way in which the Government treats a noncitizen as subject to discretionary detention under Section 1226 is discretionary release, including release on recognizance or "conditional parole," of that noncitizen. *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099, at *7 (D. Ariz. Apr. 11, 2025); *Cuervo Marin v. ICE Field Office Director*, No. C26-1071-KKE, 2026 WL 1123516, at *3 (W.D. Wash. Apr. 24, 2026). Here, the Government invoked Section 1226 when it released Petitioner on an OREC in 2018. Dkt. No. 7-5.

Notwithstanding his prior release on recognizance, the Government argues that Petitioner is detained under Section 1225(b)(2)(A) because "his status reverted to that of an arriving alien subject to mandatory detention" when his "parole under deferred action expired on June 17, 2021." Dkt. No. 5 at 5. The Court is not persuaded for several reasons.

First, there is no evidence in the record that Petitioner's 2018 OREC was ever revoked. There is likewise no evidence in the record setting an end date for Petitioner's parole. Rather, the 2020 notice stated only that Petitioner would be in deferred action status for one year, and indicated that Petitioner would receive further instructions from his case agent regarding the terms and conditions of his supervision. Dkt. No. 7-6 at 2. The Government's cursory argument does not address the regulations applicable to the termination of parole, nor explain how the Government's 2020 deferred action notice impacts Petitioner's prior release on recognizance under Section 1226.

Second, the Government's position is at odds with decisions of courts throughout this circuit that have found the expiration of a noncitizen's parole does not automatically render him

an "arriving alien" subject to mandatory detention under Section 1225(b)(2)(A). *See, e.g.*, *Patrick v. Larose*, No. 26-cv-4670, 2026 WL 2574361, at *2–3 (S.D. Cal. Aug. 31, 2026); *D.L.C. v. Wofford,* 820 F. Supp. 3d 1106, 1111–12 (E.D. Cal. 2026); *Omer G.G. v. Kaiser,* 815 F. Supp. 3d 1098, 1108–09 (E.D. Cal. 2025); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179–80 (D. Nev. 2025) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025)); *Lazard v. Divver*, No.: 26-CV-1778 JLS (JLB), 2026 WL 948400, at *3 n.2 (S.D. Cal. Apr. 8, 2026). Those cases hold that where a noncitizen's parole has expired, and the Government makes no effort to re-detain the noncitizen after expiration despite opportunities to do so, the noncitizen's liberty interest continues to grow post-expiration and is incompatible with mandatory detention under Section 1225(b)(2)(A). *See id.*

It is undisputed that prior to his detention on July 8, 2026, Petitioner was already present in the United States for over a decade; throughout that time, the Government treated Petitioner as subject to discretionary detention under Section 1226, including by releasing him on his own recognizance (*see* Dkt. No. 7-5 (OREC citing INA § 236)). Though the Government now argues that Petitioner's parole expired in June 2021, even if that were true, the Government made no effort to re-detain him for over five years. *See* Dkt. No. 6 ¶¶ 12–20, Dkt. No. 7-1 at 4, Dkt. No. 7-5, Dkt. No. 7-6.

Accordingly, the Court finds that Petitioner is detained pursuant to Section 1226(a) and not Section 1225(b).

**C. Petitioner's Detention Violates Due Process.**

Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, (Dkt. No. 1 at 1, 4–6), which prohibits the federal government from depriving any person of "life, liberty, or property without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all

'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1. <u>Petitioner has a protected interest in his liberty.</u>

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains in custody undoubtedly presents a deprivation of Petitioner's interest in his liberty. *See Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025). Here, Petitioner was detained on August 20, 2018, then released on his own recognizance. Dkt. No. 6 ¶ 17 "When [Petitioner] was released …, Petitioner took with him a liberty interest which is

entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)). The Government argues that the expiration of Petitioner's parole distinguishes this case from "the body of cases in this District holding that a noncitizen is entitled to a pre-deprivation hearing prior to the revocation of an order of recognizance, parole, or other forms of conditional liberty pending the finality of their removal proceedings." Dkt. No. 5 at 7. However, "Petitioner's liberty interest does not expire along with his parole," *Martinez-Gutierrez v. Noem*, No. 26-cv-00421, 2026 WL 279890, at *3 (E.D. Cal Feb. 3, 2026) (cleaned up), nor does expiration of parole "somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee," *L.M. v. Noem*, No. 25-cv-02194, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (citing *Ramirez Tesara*, 800 F. Supp. 3d at 1136).

Accordingly, the first *Matthews* factor favors Petitioner.

2. <u>The risk of erroneous deprivation of liberty is high.</u>

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing is high.

As described earlier in this order, Petitioner was arrested and detained during a July 2026 "targeted enforcement operation," but there is no documentation explaining the reason for Petitioner's re-detention beyond the cursory statement that ICE "discovered that Petitioner had remained in the United States unlawfully." Dkt. No. 6 ¶ 20, *see* Dkt. No. 7-1 at 3. The Government argues that "the risk of a constitutionally significant deprivation of Petitioner's liberty is minimal" because Petitioner is "a noncitizen who has not been admitted into the United States." Dkt. No. 5 at 8. But this argument ignores the record and the controlling and persuasive caselaw, *see, e.g.*, *Zadvydas v. Davis*, 533 U.S. at 693, *Bello Chacon*, 2025 WL 3562666, at *4. It also fails to

identify any procedural safeguards that can adequately substitute for a pre-deprivation hearing on Petitioner's custody status.

The absence of procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty. Accordingly, the Court finds that the second *Mathews* factor favors Petitioner.

3. <u>The Government's interest in civil detention without a hearing is low.</u>

For the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The Government's legitimate interest in enforcing immigration laws generally, *see Rodriguez Diaz*, 53 F.4th at 1208, is not necessarily threatened if a pre-deprivation hearing is required, *see Ramirez Tesara*, 800 F. Supp. 3d at 1137. That the alleged expiration of Petitioner's parole occurred years before the Government sought to act to detain him—and the Government points to no other precipitating event for detention beyond the general fact of Petitioner's presence in the United States—belies the Government's suggestion that its interests must be satisfied immediately or that procedural safeguards would harm its interest in efficient enforcement. *See* Dkt. No. 6 ¶¶ 19–20; Dkt. No. 5 at 8–9.

For these reasons, the Court finds that the Government's interest in detaining Petitioner without a pre-detention hearing is minimal: any administrative or financial burdens in providing a pre-detention hearing to Petitioner are outweighed by the risk of erroneous deprivation of the liberty interest at issue. The third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

**III. REMEDY**

Having determined that Petitioner's detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *9 (N.D. Cal. Dec. 18, 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

**IV. CONCLUSION**

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS as follows:

1) Within ONE DAY of this order, Petitioner shall be released from custody on reasonable conditions of supervision.

2) Petitioner shall not be re-detained, absent urgent circumstances, without notice and a hearing before a neutral decisionmaker. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

3) The Government shall file a declaration no later than THREE DAYS from the date of this order, documenting Petitioner's release in compliance with this order.

Dated this 25th day of September, 2026.

Kymberly K. Evanson
United States District Judge